FAY STOKES STOVALL, LOUIS STOKES BILLINGS, EDITH STOKES RICE AND JOHN W. STOKES, *Appellants,* v. CLIFFORD G. STOKES AND MARY STOKES, HIS WIFE, THE FIRST NATIONAL BANK OF TAMPA AND THE FIRST NATIONAL BANK OF TAMPA AS ADMINISTRATOR OF THE ESTATE OF SUSAN M. STOKES, DECEASED, *Appellees.*

En Banc.

Opinion Filed October 21, 1927.

Petition for Rehearing Granted December 6, 1927.

This Opinion Reaffirmed February 13, 1928, on Rehearing.

718

720

*Henry Eliot Williams,* Attorney for Appellants;

*R. E. L. Chancey,* Attorney for Appellees.

BUFORD, J.—In this case the appellants, complainants in the court below, filed bill of complaint against the appellees, defendants in the court below, the pertinent allegations of which were as follows:

That on the 5th day of January, 1905, Susan M. Stokes, widow, purchased Lot 10 of Block 6 of the Riverside Subdivision, and on said date received a conveyance of the fee simple title thereto by a good and sufficient warranty deed from H. G. Warner and wife; that said Susan M. Stokes paid for said lot out of the proceeds of an insurance policy upon the life of her deceased husband, Allen Wesley Stokes; that shortly thereafter she built her home on said lot, and to complete the construction of said home, she borrowed from her son, defendant Clifford G. Stokes, the sum of $625.00, and to secure the same executed and delivered to him a mortgage on said home and lot in that amount.

That on or about Christmas, 1905, the defendant mortgagee son, Clifford G. Stokes, offered to relieve the then anxiety and financial embarrassment of his mortgagor mother, Mrs. Susan M. Stokes (who was without means of livelihood or support, depending entirely and solely upon small remittances from her three sons, and then in need of funds for the payment of taxes and insurance on said property) by paying annually her taxes and insurance until such time as she might be able to take care of them herself. The said defendant mortgagee Clifford M. Stokes, at that time suggested that the mortgage would not secure to him repayment of future advances on account of taxes and insurance, and that it would be necessary for his mother to execute another instrument securing past as

well as future advances. Whereupon, to secure the payment of said advancements from year to year to be made by him, and to secure the payment of the moneys loaned as aforesaid by him towards the construction of said home, she executed and delivered to him a paper writing as security for said moneys advanced and to be advanced, and the mortgage above described was by him cancelled. That said Susan M. Stokes occupied said house as her home from the date of its completion in the Spring of 1905, until she sold the same on February 17th, 1925, to S. R. Binckley et al., during all of said time both she and defendant Clifford G. Stokes asserted and claimed the said home was her own and she was during all of said time unaware that the instrument she gave her son was a deed for her home.

That on or about July 10th, 1925, the defendant, Clifford G. Stokes, received as agent of his mother and in trust for her a sum of money in excess of $9,496.00 from the estate of Allen Banks Stokes, brother of defendant Clifford G. Stokes and son of said Susan M. Stokes. That subsequently thereto and about January, 1916, the defendant Clifford G. Stokes received from the sale of certain property inherited by said Susan M. Stokes from her said deceased son a sum of money in excess of $4,500.00 as agent of his mother, Susan M. Stokes, and in trust for her. That a part of the estate of said Allen Banks Stokes was inherited by the children of said Susan M. Stokes, all of whom assigned their share to defendant Clifford G. Stokes in trust, nevertheless, for their said mother. That defendant Clifford G. Stokes has failed and refused to account to his mother, said Susan M. Stokes, or any other person for the aforesaid moneys, though an accounting has been often demanded.

That Susan M. Stokes on February 17th, 1925, sold her said home by written contract entered into by her with

S. R. Binckley and Joseph A. Beasley. That at the request of said Susan M. Stokes, defendant Clifford G. Stokes came to Tampa and closed said sale for her, joining with her in a conveyance of said property to said purchasers, and at the time of said closing on March 10th, 1925, received as agent for his said mother and in trust for her a cash payment of $10,000.00 and in violation of the trust and confidence in him reposed by her procured to be executed and delivered to him by the purchasers two notes for $10,000.00 each, representing the deferred payments, due in one and two years afterward, with interest at 8% per annum and payable to defendant Clifford G. Stokes individually without any indication of his agency or trust on the face of said notes; these two notes being secured by mortgage on said property dated February 26th, 1925.

In 1925 said Susan M. Stokes purchased by contract from Rita M. Bie and William H. Frank Lot 2 of Block 1 of Richardson Place, a subdivision as per plat thereof recorded in Plat Book 1, page 140, in said Clerk's Office, for the sum of $5,500.00; that defendant Clifford G. Stokes, at the request of his said mother, closed said purchase for her and paid the purchase money out of the funds held by him as agent for and in trust for his mother, but without her knowledge or consent procured said Richardson Place lot to be conveyed to him individually, without any indication on the face of the conveyance of his agency or trust; that said Susan M. Stokes, without knowledge of this fraud and trickery, built upon said property a new home for herself and occupied same as her homestead until her death, expending for this purpose a sum in excess of $10,000.00; that since her death the same has remained unoccupied; that said defendant Clifford G. Stokes fraudulently and to acquire all the property of his mother, including the new home in Richardson Place, the title to

which he had already fraudulently acquired, and still dominating and holding undue influence over his said mother, executed and caused to be placed on record a deed from himself to his mother purporting to convey to his said mother a life estate in said property.

That during all of the aforesaid times the said Clifford G. Stokes, defendant, was the confidant and sole adviser of his said mother, Susan M. Stokes; that during the period from 1905 to the time Mrs. Susan M. Stokes inherited the aforesaid sums of money from estate of Allen Banks Stokes and the assignment of the interest of her other children in said estate, all of which was delivered to defendant Clifford G. Stokes as agent and in trust for his said mother, she was solely and entirely dependent for her livelihood and support upon small monthly remittances from her three sons, complainant John Stokes, Allen Banks Stokes, deceased, and defendant Clifford G. Stokes, who each contributed an equal monthly amount; she at all of said times being a quiet, timid, bookish woman, unaccustomed to and unfamiliar with business transactions of any kind, and by temperament, training and experience incapable of transacting business of any kind without assistance, and for the last few years was partially blind; during all of the years subsequent to the death of her husband she relied for advice and counsel as to her business transactions solely upon the defendant Clifford G. Stokes, to whom she entrusted all of the moneys received by her from the estate of her son, Allen Banks Stokes, deceased, including the shares alloted to her children and by them assigned to her; upon receipt by defendant Clifford G. Stokes of the moneys so derived from the Allen Banks Stokes Estate, he sent her from time to time the remittances from the profits of said moneys, which did not exceed $65.00 per month during the remainder of her life.

That said Clifford G. Stokes is an aggressive, domineering, suave person who held complete dominion over the will of his mother; that at a time just a few days before his mother's death and while she was stricken with her last illness and near death, for the purpose of preventing the presence of other children and the discovery of his nefarious schemes to defraud the estate of his mother, in answer to an inquiry of him from one of her children he responded that "Mother is only taking a rest cure at the hospital and there is nothing to worry about" though she was then lying prostrate at the point of death; he was at all of the aforesaid times the dominant character who at all of said times had his mother "completely in his hands and power" and under his complete control and influence.

That defendant Clifford G. Stokes, having fraudulently obtained the notes representing the deferred payments on the Riverside lot to be made payable to himself, on or about October, 1925, just prior to the death of his mother, obtained a personal loan of $5,000.00 from defendant First National Bank of Tampa and pledged as collateral security for said loan the aforesaid two notes of $10,000.00, and said notes are now held by said bank as collateral.

That your orators and defendant Clifford G. Stokes are the only children, heirs-at-law, and next of kin of said Susan M. Stokes, deceased, and only the parties to this suit are entitled to any interest in the property involved in this suit.

That defendant Clifford G. Stokes is insolvent, and is about to and intends at the earliest possible moment to obtain said two notes of $10,000.00 each from the said bank and sell the same, and the said Richardson Place lot and all property, moneys and effects in his possession belonging to the estate of said Susan M. Stokes to a *bona fide* purchaser for value without notice, thereby defeating the

rights of the estate and these complainants in the premises, and great and irreparable injury will result to the estate and your orators unless an order of the court issue restraining defendant First National Bank delivering said notes to said defendant Clifford G. Stokes or any other person, and restraining said Clifford G. Stokes from selling or transferring or in any manner interfering with the aforesaid two notes, the Richardson Place house and lot, and all other property, moneys, goods and effects of the estate of said Susan M. Stokes, deceased.

That there are no debts or claims against the estate of Susan M. Stokes.

That defendant First National Bank of Tampa was recently appointed administrator of the estate of said Susan M. Stokes and has formed and expressed an intention to make application to be relieved as administrator, and refuses to bring this suit or instigate any proceedings for the protection of the interests of the estate and the complainants touching the matters in this bill of complaint alleged.

Alleging that complainants are entitled to the relief prayed, the prayer of the bill is:

"Your orators pray that an order of this Court issue without notice restraining defendant First National Bank of Tampa from delivering aforesaid two notes of $10,000.00 each to defendant Clifford G. Stokes or any other person, and restraining defendant Clifford G. Stokes from selling, transferring or in any manner interfering with the two notes above described, the Richardson Place house and lot, and all other property, moneys, goods and effects of the said estate of the said Susan M. Stokes, deceased.

Your orators pray that an accounting may be had under the direction of this Court of all moneys, property, goods and effects of Susan M. Stokes, deceased, which have come

to the hands or control of the defendant, Clifford G. Stokes, and particularly as to the property and moneys in this bill specifically referred to.

Your orators pray that the deed from Susan M. Stokes to Clifford G. Stokes conveying the aforesaid Riverside lot be declared a mortgage, that an accounting be had under the direction of this Court to determine the amount, if any, due defendant Clifford G. Stokes, on said mortgage, and that they may be permitted to redeem.

Your orators pray that a decree of this Court issue adjudging the defendant Clifford G. Stokes to hold said Richardson Place house and lot in trust for each of your orators and defendant Clifford G. Stokes as tenants in common, with equal interests.

Your orators pray that an order of this Court issue decreeing the deed from Susan M. Stokes to Clifford G. Stokes conveying the Riverside lot, and the deed from defendant Clifford G. Stokes to Susan M. Stokes conveying a life estate in the Richardson Place lot to be null and void and of no effect on account of the fraud and undue influence exercised over the said Susan M. Stokes by her son, defendant Clifford G. Stokes; That a decree of this Court issue adjudging the estate of Susan M. Stokes to be the owners and entitled to the possession of the aforesaid two notes of $10,000.00 each, executed by Joseph A. Beasley, et al., to Clifford G. Stokes, dated March 10th, 1925, and secured by a mortgage of even date, recorded in Mortgage Book 218, page 131, in said Clerk's Office. That an order of this Court issue adjudging that Susan M. Stokes died seized and possessed of the Richardson Place lot in fee simple, and that your orators are the owners of an undivided four-fifths interest and that defendant Clifford G. Stokes is the owner of an undivided one-fifth interest in said Richardson Place lot, and that the title of your

orators be quieted as to said four-fifths interest against the claims of defendant Clifford G. Stokes and all persons claiming under him. That a decree of this Court issue declaring and establishing an equitable lien in favor of your orators for the estate of Susan M. Stokes, deceased, upon the interest of defendant Clifford G. Stokes in the Richardson Place house and lot, and other property of said estate to the extent of any moneys found to be due the estate of your orators by the defendant Clifford G. Stokes on an accounting to be had in this suit.

That an order or decree of this Court adjudge the rights of the defendant, Mary Stokes, wife of defendant Clifford G. Stokes, are inferior to the rights of your orators and the estate of Susan M. Stokes in the premises.

That your orators may have such other and further relief in the premises as equity may require and to your Honors shall seem meet and fit.''

The respondents, Clifford G. Stokes and his wife, Mary Stokes, filed answer to the bill of complaint. The answer admitted the purchase of the lot in Riverside subdivision by Susan M. Stokes but neither admitted nor denied that the lot was paid for as alleged in the bill.

The answer admitted that Susan M. Stokes built a home on such lot and averred that Clifford G. Stokes donated the sum of $1,000.00 towards the expense of building the home and afterwards made a loan to Susan M. Stokes of $650.00 to complete the building and that thereafter, the same being insisted upon by Susan M. Stokes, Clifford G. Stokes accepted a mortgage on the house and lot to secure the payment of the $650.00.

The answer alleges that during the summer of 1906 Susan M. Stokes represented to Clifford G. Stokes that she was unable to pay off the mortgage indebtedness and was unable to keep up the repair, pay the taxes or other

legal assessments against the said house and that she so advised John Wesley Stokes and Allen Banks Stokes, two of her sons who were older than the respondent, Clifford G. Stokes, and offered to convey the above described property to them or either of them, subject to a life interest of the said Susan M. Stokes, if they or either of them, would pay off said mortgage loan, assume the burden of paying taxes and other legal assessments on said property, and the repairs on said premises, and that the said sons had refused to accept her said offer made by the said Susan M. Stokes; that thereupon the said Susan M. Stokes offered to the respondent, Clifford G. Stokes, to pay off and discharge said mortgage indebtedness by conveying to said Clifford G. Stokes the title to the above described property, reserving unto herself a life estate therein, in consideration of the said Clifford G. Stokes would cancel said mortgage indebtedness and would assume the burden of paying the taxes and other assessments against said premises, and maintaining repairs on said premises and paying the electric light and telephone bills for the use and benefit of said Susan M. Stokes. Whereupon, the respondent, Clifford G. Stokes, accepted the said offer, cancelled said mortgaged indebtedness, took title to the said property, the said Susan M. Stokes reserving a life estate therein, and since said time respondent has paid all taxes and other municipal assessments and has maintained all repairs on said house and has paid all light and telephone bills incurred by the said Susan M. Stokes since 1906, and has otherwise kept and performed all agreements required of him to be kept and performed as full and complete compensation to be paid and bestowed the said Susan M. Stokes in the purchase of said property, subject to the life interest of the said Susan M. Stokes as aforesaid; that from 1906 until the said property was

sold as alleged in said bill of complaint, respondent, Clifford G. Stokes, in addition to paying taxes and insurance on said building, paid one item of street assessment for paving amounting to approximately Nine Hundred Dollars and spent large sums of money during said interval of time in putting new roofs on said house and painting the same biennially and otherwise repairing said premises as often as necessities for such repairs arose; these respondents aver that subject to the life interest of said Susan M. Stokes, that the said Clifford G. Stokes was the owner of title to said premises since 1906.

The answer denied that Clifford G. Stokes ever suggested to Susan M. Stokes that the mortgage hereinbefore referred to did not secure him for the loan made or for advances made on account of taxes and insurance or to be made on account of taxes and insurance, or that he insisted that the said Susan M. Stokes convey the title to said premises to him for the purpose of better securing the indebtedness as alleged in said bill of complaint and these respondents deny that the deed made by Susan M. Stokes to Clifford G. Stokes was made for the purpose of securing any indebtedness from said Susan M. Stokes to the said Clifford G. Stokes, either for money already advanced to her by him or for obligations to be discharged by him for her and deny that the said deed of conveyance from said Susan M. Stokes to the said Clifford G. Stokes was for any purpose other than to convey the absolute title to said premises to said Clifford G. Stokes subject to the life interest of the said Susan M. Stokes. These respondents admit that said Susan M. Stokes occupied said house on said premises as her home from the time it was completed in 1905 until it was sold in 1925, and denied that during all of said time Susan M. Stokes and Clifford G. Stokes asserted and claimed said home was the home

of Susan M. Stokes, but averred that both Susan M. Stokes and Clifford G. Stokes knew and recognized the title to said premises to be in Clifford G. Stokes subject to the life estate of Susan M. Stokes.

The answer denied that Susan M. Stokes was unaware that the deed which she gave to Clifford G. Stokes was in fact a deed, but charged the truth to be that she was fully aware of the nature of said· deed and that Clifford G. Stokes was taking the same with the understanding that Susan M. Stokes was to have a life estate in the property and that such was the agreement between Clifford G. Stokes and Susan M. Stokes, and that subsequent to the marriage of Clifford G. Stokes he executed the deed conveying a life estate for the protection of Susan M. Stokes, which deed was a deed of trust to Edith Stokes Rice.

The answer alleges that the deed was made nineteen (19) years before the filing of the bill of complaint and charges laches.

The answer admits that Clifford G. Stokes, as agent for Susan M. Stokes received an amount of money in 1915 and 1916 for the use of Susan M. Stokes and avers that he has at all times been ready to account for the same.

The answer admits that Susan M. Stokes entered into a contract with Binckley and Beasley for the sale of the property as alleged in the bill of complaint, but denies that Susan M. Stokes either had or claimed the right to sell the property and in this connection avers the truth to be that the said Susan M. Stokes had for years desired to live in a different locality in the City of Tampa, and that respondent, Clifford G. Stokes, had on various occasions suggested to her that if they could get a judicial sale of the property hereinbefore described that he would be willing to sell said property and either buy the said Susan M. Stokes a home in another location or build the said

Susan M. Stokes a home in another location which would
be agreeable with her as a place to live and give to her a
life estate therein the same as she had in the property
hereinbefore described; that when the said contract was
so made with the said Binckley and Beasley, the said Susan
M. Stokes requested the respondent, Clifford G. Stokes, to
come to Tampa for the purpose of getting his consent to
said sale and building the said Susan M. Stokes a new
home in a different location; that the respondent, Clifford
G. Stokes, came to Tampa and agreed to sell the property
hereinbefore described for the consideration of $30,000.00
and agreed to purchase Lot 2 of Block 1 of Richardson
Place and to build said Susan M. Stokes a home thereon
and to take title thereto in the said Clifford G. Stokes and
to convey to the said Susan M. Stokes a life interest therein,
at the same time agreeing with the said Susan M. Stokes
that she might have the use of the income during her life
from the proceeds of the sale of said property hereinbefore
first described, after deducting the costs of buying the lot
in said Richardson Place Subdivision and building a new
house thereon; that thereupon the old home was sold and
the respondent, Clifford G. Stokes, purchased the said lot
in Richardson Place Subdivision and built a home thereon,
taking title thereto in his name and conveying to his
mother, Susan M. Stokes, a life estate therein; that the
respondent, Clifford G. Stokes, for the lot in said Richard-
son Place Subdivision and for the home erected thereon
expended approximately Fifteen Thousand Dollars there-
for and has allowed the said Susan M. Stokes, up to the
time of her death, the interest at the rate of eight per
cent per annum on the difference between the cost of said
house and lot and the purchase price of Thirty Thousand
Dollars obtained in the sale of Riverside Subdivision home.

The answer avers that Susan M. Stokes was fully aware

of all the matters averred in the answer and fully informed as to all transactions with reference to the sale of the Riverside lot and with reference to the purchase of the Richardson Place and building of the house thereon and of the taking of the title thereto in Clifford G. Stokes and of the giving of the life estate therein to Susan M. Stokes, and denies that any fraud, trickery or deceit was practiced and denies that there was any fraud or undue influence perpetrated or exerted upon Susan M. Stokes. It also denied that the complainants had or are entitled to any claim of any estate in the Richardson Place or in any part of the proceeds derived from the sale of the Riverside property.

The answer denies that any part of the money coming into the hands of Clifford G. Stokes as agent for Susan M. Stokes was misappropriated, or not properly accounted for. It denies that there was any effort upon the part of Clifford G. Stokes to take any advantage of the complainants in his dealings with Susan M. Stokes. It denies that he was of the character which the bill of complaint represents Clifford G. Stokes to be, and denies that Clifford G. Stokes fraudulently obtained the notes representing the deferred payments on the Riverside property and avers that the same were delivered to him with full knowledge and consent of Susan M. Stokes with the understanding that they were the property of Clifford G. Stokes and that Clifford G. Stokes would account to her for her life time for the income derived from the proceeds of the sale of the property, after first deducting the costs of building the new home, and admits that Clifford G. Stokes borrowed $5,000.00 from the First National Bank of Tampa and pledged as collateral security for said loan four notes in the sum of $5,000 each which were given by Binckley and Beasley, but avers that the $5,000 which was borrowed to-

gether with the $10,000.00 in cash paid by Binckley and Beasley was applied to buying the Richardson Place lot and building the home thereon. It denies the insolvency of Clifford G. Stokes and denies any intention to cheat or defraud the complainants, or either of them, or to defeat any of their rights in the estate of Susan M. Stokes.

The answer denies the right of the complainants to each and every item of relief prayed for, except to the right of an accounting for the moneys which came into the hands of Clifford G. Stokes as agent for Susan M. Stokes.

A master was appointed and testimony was taken. Final decree was entered, as follows:

"This cause having been submitted to the Court on a former day for a final hearing on the pleadings and testimony reported by the special master herein, and the Court having considered the same, and being otherwise fully informed in the premises, finds:

FIRST—That the equities in this cause are against the Complainants and are with the respondents as to all matters and things involved herein except on the question of an accounting on the part of the respondent, Clifford G. Stokes, as to his handling of the estate of Allen Banks Stokes, as trustee and agent for his mother, Susan M. Stokes.

SECOND—That the testimony on the question of an accounting as to the handling of the Allen Banks Stokes estate by the respondent, Clifford G. Stokes, is so indefinite and uncertain that the Court cannot make a decree with reference to the same.

WHEREUPON, IT IS ORDERED, ADJUDGED AND DECREED, That this cause, insofar as same involves an accounting on the part of the respondent, Clifford G. Stokes, with reference to his handling of the estate of Allen Banks Stokes as agent and trustee for his mother,

Susan M. Stokes, be and the same is hereby re-referred to George Gibbs, Esq., a practicing attorney at this bar, for the purpose of taking further proof as to said accounting, and said special master is directed to proceed with all convenient dispatch in the taking of such proofs and report the same to this Court without delay, the Court hereby retaining jurisdiction of this cause for the purpose of making a final adjudication as to said accounting.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That the temporary restraining order issued herein, directed to the First National Bank of Tampa and to Clifford G. Stokes, be and the same is hereby dissolved.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That the respondent, Clifford G. Stokes, is the sole owner in fee simple of the following described real estate, situate, lying and being in Hillsborough County, Florida, to-wit:

Lot Two (2) of Block One (1) of Richardson Place Subdivision, as per plat thereof recorded in Plat Book 1, page 140, in the public records of Hillsborough County, Florida, and that the complainants, nor either of them, have any right, claim or interest therein.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED, That the respondent, Clifford G. Stokes, is the sole owner of the notes given by S. R. Binckley and Joseph A. Beasley on account of the purchase price growing out of the sale of the following described lands, situate, lying and being in Hillsborough County, Florida, to-wit:

Lot Ten (10) of Block Six (6) of Riverside Subdivision, as per plat thereof recorded in the office of the Clerk of the Circuit Court of Hillsborough County, Florida, and that the complainants herein have no right, title or interest in the same.

IT IS FURTHER ORDERED, ADJUDGED AND DE-
CREED, That the respondent, Clifford G. Stokes, is the
sole owner of any and all monies, collected by the First
National Bank of Tampa on account of notes given by the
said S. R. Binckley and Joseph A. Beasley in connection
with the purchase of said Lot 10 of Block 6 Riverside Sub-
division, and that the complainants herein have no inter-
est, claim or title thereto.

IT IS FURTHER ORDERED, ADJUDGED AND DE-
CREED, That each and every of the prayers of the com-
plainants' bill herein be and the same is hereby denied,
except insofar as the same relates to the question of the ac-
counting as to the handling by Clifford G. Stokes as agent
and trustee for Susan M. Stokes of the estate of Allen
Banks Stokes, and for the purpose only of adjudicating
the said accounting and cost, jurisdiction is hereby re-
tained.''

From this decree appeal was taken by the complainants.

There were 53 assignments of error. We think that all
of the assignments of error may be disposed of by disposi-
tion of the first assignment of error, which was: ''That
the Court erred in rending the final decree.''

The record, when stripped of all incompetent and illegal
evidence and having applied to it the legal presumptions
which obtain in regard to such transactions as are here
under consideration, we think presents a case which falls
far short of being sufficient to sustain the decree as entered
herein, although we observe the well settled rule that the
findings of the chancellor will not be disturbed on appeal,
unless it is made clearly to appear that the same were
erroneous. The decree appears to have been based very
largely upon the effect of a deed which was said to have
been executed by Susan M. Stokes to Clifford G. Stokes,
but which was not filed in evidence and which is not before

this Court; and was evidently influenced by the testimony submitted by Clifford G. Stokes as a witness in his own behalf, testifying to transactions, agreements and understandings between himself and Susan M. Stokes, his mother, then deceased, much of which testimony coming from him was incompetent and can not be given consideration for any purpose whatever by this Court.

The allegations of the bill of complaint upon which the appellants base their rights to the relief prayed were abundantly sustained by the legal proof as shown by the record.

The bill of complaint alleges that a deed was made from Susan M. Stokes to Clifford G. Stokes in lieu of a mortgage which had been theretofore made to secure the sum of $625.00 and that the deed was to secure this sum, together with future advances to be made by Clifford G. Stokes to Susan M. Stokes and that the mortgage was then cancelled; that the deed was in effect a mortgage.

The answer admits the making of the deed, but avers that it passed the absolute title in consideration of the discharge of the mortgage indebtedness and Clifford G. Stokes "would assume the burden of paying the taxes and other assessments against the said premises and maintain repairs on the said premises and paying the electric light and telephone bills for the use and benefit of the said Susan M. Stokes * * * and the said Susan M. Stokes reserving a life estate therein."

As the deed referred to does not appear in the record, we may only assume that such deed was made by the allegations of the pleadings and must determine the effect of the deed from those allegations together with the legal evidence in regard thereto. If the deed was intended to pass an absolute title then it would have been entirely idle to have included in the transactions an agreement on the part of Clifford G. Stokes to "assume the burden of

paying taxes on said property and maintaining repairs on said premises.''

The evidence shows conclusively that Mrs. Stokes never at any time considered this transaction, whatever it may have been, as passing the absolute title to the property to Clifford G. Stokes. The undisputed evidence is that Clifford G. Stokes told one of the witnesses to the deed at the time she subscribed to same as a witness that the same was made to secure him in advances which he had made and was to make. The evidence shows conclusively that the consideration for which the deed was alleged to have been made was grossly inadequate. The evidence shows that the grantee in the deed was the much beloved and greatly trusted son of the grantor, a woman of little or no business experience, and that he exercised at all times a dominating influence over his mother and that in those times she trusted him to protect all her interests and to handle her affairs.

In Alexander v. Rodriguez, U. S. Rep. 20 Law Edition, 406, the Court say: ''To give validity to a sale by a mortgagor to a mortgagee it must be shown that the conduct of the mortgagee was in all things fair and frank and that he paid for the property what it was worth.'' And again, it is said: ''He must take no advantage of the fears or poverty of the other party; that the mortgagor knowingly surrendered and never intended to reclaim is of no consequence, if there is vice in the transaction.''

In the same case it is said: ''Where confidential relations exist between a debtor and a creditor and a conveyance is made by the debtor to the creditor it will be treated as a mortgage for the consideration of the deed as a debt; and this is the construction in equity of such a transaction. But the creditor may by affirmative proof rebut this presumptive case by showing that actual negotiations for sale

took place and a valid and fair sale for adequate or reasonable price was made and that no advantage was taken of the needy circumstances of the debtor.''

In Russell v. Southard, U. S. Rep. 13, Law Edition, 927, Mr. Justice CURTIS delivering the opinion of the Court, says: ''It is the doctrine of this Court that when it is alleged and proved that a loan on security was really intended and the defendant sets up the loan as a payment of purchase money, and the conveyance as a sale, both fraud and vice in the consideration are sufficiently averred and proved to require a court of equity to hold the transaction to be a mortgage.'' He then quotes. with approval, from Edrington v. Harper, Ky. 3 J. J. Marshall, 355, as follows: ''The fact that the real transaction between the parties was a borrowing and lending will, whenever, or however, it may appear, show that a deed absolute on its face was intended as a security for money; and whenever it can be ascretained to be a security for money it is only a mortgage, however artfully it may be disguised.'' It is not needful for us to go beyond the portals of our own Court to find the established rule governing cases of this character. In Elliott v. Conner, 63 Fla. 408; 58 Sou. 241, Mr. Justice WHITFIELD, speaking for the Court, after quoting our statute then Sections 2494 and 2495 of the General Statutes, now Sections 3836 and 3837, Revised General Statutes, says:

''Under these statutes a mortgagee acquires only a specific lien upon the property of the mortgagor that is covered by the mortgage, and an 'instrument of writing conveying or selling property, either real or personal, for the purpose or with th eintention of securing the payment of money,' which upon its face conveys title to property, may be subject to the provisions of the statute that it 'shall be deemed and held a mortgage,' if by extrinsic

facts the statute is shown to apply; and in cases of doubt the instrument may when justice requires it be held to be in law a mortgage. The relations existing between the parties at the time of its execution may be considered in determining whether a deed of conveyance of land absolute on its face was intended to operate as a mortgage to secure the payment of a debt. Hull v. Burr, 58 Fla. 432, 50 So. Rep. 754; DeBartlett v. Wilson, 52 Fla. 497, 42 South. Rep. 189; Conner v. Conner, 59 Fla. 467, 52 South. Rep. 727

An absolute conveyance of property is in equity a mortgage if when made it was intended by the parties to be security for the payment of money. If when an absolute conveyance of property is made it is in legal effect a mortgage it remains a mortgage. Where a conveyance of property is absolute on its face, the burden of showing that it was when executed intended to be a mortgage to secure the payment of money is upon the grantor. The conduct of the parties and the circumstances under which the instrument was executed may be shown in evidence as bearing upon the intent and purpose of the parties to the transaction. The mere secret intention of either party as to the purpose of the instrument will not control. But if from all the facts and circumstances of the case it appears that the real purpose of the parties to an absolute conveyance of property was to secure the payment of money then due, and not the actual extinguishment of the debt, the conveyance will be regarded as a mortgage. In such a case the mortgagee may foreclose or the mortgagor may redeem. Where there is an existing debt which is not certainly extinguished by an absolute conveyance of property, and the amount of the debt is not fully known or ascertained, and the value of the property when conveyed was considerably greater than the probable total indebted-

ness would be when definitely ascertained, and there is evidence that the grantor intended the conveyance as a security for the debt and not as an absolute sale and there was no proposition for the sale of the property, but the attending circumstances were such that the grantee must have understood the conveyance was intended by the grantor as security for the debt the instrument may be held a mortgage, especially when by so doing justice to both parties will be best subserved. See 1 Jones on Mortgages (6th Ed.), Sec. 265, *et seq.*"

In Conner v. Conner, 59 Fla. 467, 52 Sou. 727, the Court say: "A deed absolute on its face may by parol evidence be shown to be a mortgage, and in cases of doubt the instrument should be held to be a mortgage. DeBartlett v. Wilson, 52 Fla. 497, 42 South. Rep. 189; Hull v. Burr, 58 Fla. 432, 50 South. Rep. 754; Franklin v. Ayer, 22 Fla. 654.

An instrument must be deemed and held a mortgage, whatever may be its form, if, taken alone or in connection with the surrounding facts and attendant circumstances, it appears to have been given for the purpose or with the intention of securing the payment of money, and the mere absence of terms of defeasance cannot determine whether it is a mortgage or not."

In the case of Skeels v. Blanchard the Supreme Court of Vermont, 81 Atlantic 913, Mr. Justice MUNSON, delivering the opinion of the Court, says:

"When it is once established that a mortgage exists, the equitable right of redemption attaches to the transaction as an inseparable incident. No contemporaneous understanding, however formally expressed or artfully concealed, will be permitted to deprive the debtor of this right. It can be defeated only by a subsequent agreement upon a further consideration.

The right of a mortgagee to become the purchaser of the equity is unquestioned, but the relations of the parties are such that the transaction will be carefully scrutinized. Russell v. Southard, 12 How. 139, 13 Law Ed. 927; Peugh v. Davis, 96 U. S. 332, 24 L. Ed. 775. The rule in such a case is said to be substantially the same as that prevailing when the deed of a beneficiary to his trustee is questioned. Villa v. Rodriquez, 12 Wall. 323, 20 L. Ed. 406.

A conveyance of mortgaged premises by the mortgagor to the mortgagee will be regarded as a mere change in the form of the security, unless it clearly and unequivocally appears that both parties intended that it should operate as a bar to the equity of redemption. Ennor v. Thompson, 46 Ill. 214. See also Bradbury v. Davenport, 114 Cal. 593, 46 Pac. 1062, 55 Am. St. Rep. 92; Hall v. Hall, 41 S. C. 163, 19 S. E. 305, 44 Am. St. Rep. 696. When premises have been mortgaged to secure a debt, subsequent transfers of property on account of the debt are to be regarded prima facie as securities, and subject to the right of redemption. 3 Lead. Cas. Eq. 444. It is evident from these authorities that the rule which requires more than a preponderance of evidence to establish an absolute deed as a mortgage cannot be applied to a deed covering premises already mortgaged by the grantor to the grantee without overruling a long established rule pertaining to the equity of redemption.''

In the case of Lynch v. Lynch a case decided by District Court of Appeals, Third District of California, and rehearing denied by the Supreme Court of California, reported 135 Pacific 1101, Mr. Justice HART, speaking for the Court in the opinion, says:

''But the further point is urged that the consideration for the land was shown to have been inadequate when compared to its actual value at the time of the transfer, and

that this circumstance, viewed in connection with certain declarations which were shown to have been made by the defendants in opposition to the theory that the conveyance involved an absolute transfer of the property, and considered also in connection with the fact that the parties sustained the relation of parent and children, from which relationship the presumption arises that in the transaction a confidential relation subsisted between them, was sufficient to turn the scale in favor of the theory that the deed was intended not as a sale of the land but to have the effect only of a lien to secure the defendants reimbursement for the money advanced by them to their father. Inadequacy of consideration, where shown, is an element which is always given great weight by courts of equity in determining whether a tranaction involving the transfer of valuable property by one to another is unconscientious or constructively fraudulent or perhaps as tending to prove actual fraud. Indeed, it has always been looked upon by such courts as sufficient to create a strong suspicion that the transaction has not been characterized by good faith in the party securing benefits thereby and to cast upon him the burden of making it perfectly clear that it was in all respects honest and fair and just to the grantor. And where to the circumstances of inadequacy of consideration is added the circumstance that the parties to the transaction stand in a confidential relation toward each other or are so connected in blood as that the presumption arises that such a relation exists between them (Nobles v. Hutton, 7 Cal. App. 14, 23, 93 Pac. 289, and cases therein cited), a case for the invalidation of the contract or transaction is, in the eyes of a court of equity, well-nigh complete.''

We could fill many pages with the citation of authorities supporting the rule which we have quoted with approval, *supra.* The law as enunciated in the cases referred to

should be applied in the instant case and, being so applied, we must hold that the deed referred to, executed by Susan M. Stokes to Clifford G. Stokes and purporting to convey ''Lot 10 of Block 6 of Riverside Subdivision, as per plat thereof recorded in the office of the Clerk of the Circuit Court of Hillsborough County, Florida,'' was a deed given in lieu of a mortgage theretofore existing and was for the purpose of securing the same indebtedness for which the mortgage had been given, together with future advances to be made by Clifford G. Stokes, and that such deed was in law and equity a mortgage; that from the proceeds of the sale of such property Clifford G. Stokes was and is entitled for reimbursement for the amount of the original loan, together with the advances, if any, thereafter made from his private funds to Susan M. Stokes.

Having so held, it necessarily follows that we must hold the conveyance of ''Lot 2, Block 1 of Richardson Place Subdivision, as per plat thereof recorded in plat book 1, page 140, in the public records of Hillsborough County, Florida,'' to have been a deed of conveyance in trust to Clifford G. Stokes for the use and benefit of Susan M. Stokes, her heirs and assigns, and that Clifford G. Stokes now holds the legal title to the said lot in trust for himself and the other heirs of Susan M. Stokes and that he holds the residue of the proceeds of the sale of the above described Riverside lot likewise in trust for himself and the other heirs of Susan M. Stokes. It is therefore ordered that that part of the decree which reads as follows:

''WHEREUPON, IT IS ORDERED, ADJUDGED AND DECREED, That this cause, insofar as same involves an accounting on the part of the respondent, Clifford G. Stokes, with reference to his handling of the estate of Allen Banks Stokes as agent and trustee for his mother, Susan M. Stokes, be and the same is hereby re-referred to

George Gibbs, Esq., a practicing attorney at this bar, for the purpose of taking further proof as to said accounting, and said special master is directed to proceed with all convenient dispatch in the taking of such proofs and report the same to this Court without delay, the Court hereby retaining jurisdiction of this cause for the purpose of making a final adjudication as to said accounting,'' be and the same is hereby affirmed. All the remainder of said decree is reversed, with directions for such further decrees and accountings as may be required not inconsistent with this opinion, and that the costs of this appeal shall be taxed against Clifford G. Stokes.

Affirmed in part;

Reversed in part.

ELLIS, C. J., AND WHITFIELD, J., concur.

TERRELL AND STRUM, J. J., dissent.

BROWN, J., not participating.