PER CURIAM.
The plaintiff, Mary H. Clark, sought a declaratory determination of her rights under two deeds to certain real property in Dade County, Florida. She alleged that she had executed a blank deed which had somehow fallen into the hands of her brother, William J: Howard, who inserted his name, recorded it, and later attempted to convey the property by a subsequent deed. The first deed was allegedly executed without consideration for the sole purpose of preventing her husband from interfering with any subsequent conveyance which she might have wished to make. The brother’s answer alleged that the execution of the first deed was made in consideration of a promise of' future advances with the understanding that he would record it if she were to default. The chancellor held the first deed valid and a final decree was entered for the brother, Howard, from which the plaintiff now appeals.
Although much of the evidence is in conflict, it appears that the following transpired. On October 29, 1952 the plaintiff and her former husband executed a warranty deed to the brother, covering the premises concerned. At the time the plaintiff executed the deed she did not owe the defendant any money on this property, although she did owe him some money on property in another state.
The record shows, however, that after the 1952 deed was executed there were many financial transactions between the plaintiff and her brother. When it was intended that an advance should be secured by the subject property, a promissory note was signed and a mortgage given as evidence of the secured transaction.
The deed was placed in a safety deposit box to which the brother and a second sister, Flo, had access. On June 7, 1955, the plaintiff gave Flo a letter in which she stated, in effect, that if the plaintiff failed in her obligations in regards to payment of the first mortgage and other obligations on the subject property, the sister should turn the deed over to the brother to be recorded, or do as he wished. This letter went on to state that, “If I can’t manage to hold property it is my desire for Mr. Howard [brother] to take full control and disregard any interest I may have had.”
*304 .The plaintiff incurred many obligations on the subject property, but failed to uphold them. When the brother learned that the bank holding the first mortgage on the property was going to foreclose its mortgage, he recorded the first deed of October 29, 1952. The recording date was October 10, 1963, about eleven years after the execution of the deed.
During the entire eleven years, Mary Clark maintained control over the property and was the record title holder. The defendant, by his conduct, treated her as such. The existence of this relationship is borne out in statements made in the brother’s signed answer and testimony:
* * * * * *
“ * * * He thereupon advised the Plaintiff that if she expected him to continue making advances for the property, she should give him a deed to the property so that he could avoid the cost of foreclosure in the event she failed in her obligations. * * * ”
* * * * * *
The defendant was asked at trial:
* * * * * *
“Q What was the understanding between you and Mrs. Clark on October 29, 1952, when the deed was executed?
“A I believe, as far as the best of my recollection, it had nothing to do with her husband. I don’t remember .any distrust of her husband ,at the time.
“Q What was the deed for?
“A I advanced money to her. I said, ‘I will advance no more unless I have some collateral.’ ”
* * * * * *
Evidently, the brother himself must have considered the “deed,” although absolute in its terms, as a mortgage for future advances. It was executed in the form of a deed, so that he could avoid the cost of foreclosure in the event the plaintiff failed in her obligations.
A deed executed as security for money and other advances, though absolute in form, is deemed to be a mortgage at law.[1] Furthermore, a mortgage given for the purpose of securing future advances is valid [2] and parol evidence may be introduced to show the future advances were to be secured.[3] In Stovall v. Stokes,[4] the “deed” in question was held to be no more than a mortgage for past and future advances.
The statute, supra, provides that such deeds are subject to the same rules of foreclosure as are prescribed in relation to mortgages. The method by which the defendant attempted to obtain the property was by simply recording the deed and taking physical possession of the property during the absence of the plaintiff eleven years after execution and delivery. Such a procedure is prohibited by law. See 22 Fla.Jur. Mortgages, § 290, and Stovall v. Stokes, supra.
*305 The brother’s subsequent assignment of other judgments and mortgages on the property, to a corporation, Bay State Enterprises, Inc., in which he owned fifty per cent of the stock, and later conveyance of the property to an admitted “straw man” must, accordingly, be held invalid.
For these reasons, the cause is reversed and remanded for further action consistent herewith.
Reversed and remanded.

. Section 697.01, Florida Statutes, F.S.A.:
“All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same rules of foreclosure and to the same regulations, restraints and forms as are prescribed in relation to mortgages.
“Provided, however, that no such conveyance shall be deemed or held to be a mortgage, as against a bona fide purchaser or mortgagee, for value without notice, holding under the grantee.” See also Markell v. Hilpert, 140 Fla. 842, 192 So. 392 (1939); Stovall v. Stokes, 94 Fla. 717, 115 So. 828 (1927); Walls v. Endel, 20 Fla. 86 (1883).

. Section 697.04, Florida Statutes, F.S.A.

. McEwen v. Growers’ Loan and Guaranty Co., 104 Fla. 176, 139 So. 805 (1932).

. Supra, note [1].