323 So.2d 35 (1975)
Rowena MacGREGOR and Lester W. Bennett, Appellants,
v.
Daniel D. MacGREGOR, a/K/a Daniel E. MacGregor, Jr., Appellee.
No. 73-1464.
District Court of Appeal of Florida, Fourth District.
November 7, 1975.
Rehearing Denied December 29, 1975.
*36 Hal H. McCaghren of Hal H. McCaghren Law Offices, West Palm Beach, for appellants.
James W. Nowlin, Jr., of Nowlin Adams Nowlin & Sumrall, Delray Beach, for appellee.
SCHWARTZ, ALAN R., Associate Judge.
In 1969, Mr. and Mrs. MacGregor owned real property in Palm Beach County by the entireties. On August 12 of that year, Mrs. MacGregor, without the joinder of her husband, quit claimed the property to her father, Lester W. Bennett. Six weeks *37 later, on September 24, 1969, Mr. MacGregor, without the joinder of his wife, executed a quit claim deed in the same form to the same property to the same person, Mr. Bennett. On November 30, 1970, Mr. Bennett quit claimed the property back to his daughter, Mrs. MacGregor. On February 3, 1971, the MacGregors were divorced in Palm Beach County Circuit Court.
In 1973, Mr. MacGregor filed this action to set aside the three quit claim deeds and to quiet title to the property in the then ex-Mrs. MacGregor and himself as tenants in common. Although the complaint also alleged, apparently arguendo, that the deeds from his then-wife and himself were intended merely as a security device rather than to pass title, the primary thrust of his position was that the separate quit claim deeds to property held by husband and wife as tenants by the entireties were each totally void and ineffective to pass title. Mrs. MacGregor and Mr. Bennett, both of whom were made defendants in the case, answered the complaint, denying the ineffectiveness of the separate deeds and the allegation that the deeds should properly be viewed only as a mortgage. The defendants also raised affirmative defenses of estoppel and laches on the part of Mr. MacGregor. The defendants, did not, however, deny either that the property had in fact been held by the entireties or that the MacGregors had executed separate instruments to the property on separate dates. Based upon these admissions, the plaintiff moved for judgment on the pleadings in his favor pursuant to Florida R.C.P. 1.140(c). The trial judge granted the motion and entered a Final Judgment voiding the quit claim deeds in question, thus holding, as a matter of law, that no set of facts could be adduced to defeat the right of the plaintiff to the relief claimed. Mrs. MacGregor and Mr. Bennett have brought this appeal from that Final Judgment on the pleadings.
The judgment below, and the contention of Mr. MacGregor as appellee here, are each based on an application of the often repeated "rule" that, as stated in 17 Fla. Jur., Husband and Wife, § 27, pp. 86-87:
"A husband and wife owning property in an estate by the entireties may together convey or mortgage such estate in a proper case. Neither spouse alone, however, can do anything to alter the tenancy of identifiable property held by the entireties. Although it is true that the estate held by spouses in an estate by the entireties is one per tout et non per my, there are still two owners of the property, and both must join in a conveyance of it." [emphasis supplied]
We hold that this "rule" may not be applied so as to invalidate the deeds involved under the specific circumstances of this case. Indeed, we hold, directly to the contrary, that identical, although separately executed, deeds by both husband and wife are effective to pass title to entireties property. Accordingly, we reverse the judgment on the pleadings below.
It is undeniably the case that broad and unqualified statements to the effect that "both [spouses] must join in a conveyance of ... property [held by the entireties]" often appear in the Florida cases and commentaries. E.g., Montgomery v. Gipson, Fla. 1954, 69 So.2d 305, 306; Glasser v. Columbia Federal Savings & Loan Ass'n, Fla. 1967, 197 So.2d 6, 7; Hunt v. Covington, 145 Fla. 706, 200 So. 76, 77 (1941). These statements, however, almost invariably appear in dicta and have never been applied, even in dicta, to a factual situation such as this one, in which separate but identical deeds to the identical grantee have been executed to the entireties property by both spouses. It is a commonplace that, as stated by our Supreme Court in Ward v. Baskin, Fla. 1957, 94 So.2d 859, 860:
"A judicial opinion should be evaluated as a precedent in the light of the factual situation that gives rise to the opinion. The law is not a mathematically exact science. A perfectly sound principle as *38 applied to one set of facts might be entirely inappropriate when a factual variant is introduced."
Accord, e.g. Dade County v. Brigham, Fla. 1950, 47 So.2d 602, 603, and cases cited. Indeed, the impropriety of a District Court's acceptance of an earlier decision of the Supreme Court as controlling precedent in a materially variant situation is so pronounced that it forms a well recognized basis for the exercise of certiorari jurisdiction in the Supreme Court on the ground that the one decision is in "direct conflict" with the other. McBurnette v. Playground Equipment Corp., Fla. 1962, 137 So.2d 563.
An analysis of the reason for and basis of the rule precluding separate conveyances of entireties property in terms of this set of facts establishes, we think, that it may not be applied so as to render the MacGregors' individual conveyances void. The real, as opposed to the metaphysical reason for this rule, as in the case of the entire concept of the estate by the entireties (despite all the neo-Platonic references in the cases to the four "unities" which form its basis), is essentially to prevent the interest of one spouse in the entireties property from being adversely affected by the independent act of the other. As what we consider to be the "true rule" was set forth in Tingle v. Hornsby, Fla. App. 1959, 111 So.2d 274, 277:
"... neither spouse can without the assent of the other, alien or forfeit any part of an estate by the entirety so as to defeat the rights of the other." [emphasis supplied]
Thus, separate transfers of entireties property may be set aside only if they both (a) adversely affect the interest of the other spouse and (b) occur without the other's "assent". In this case the separate deed of Mr. MacGregor can hardly be said to have adversely affected the interests of Mrs. MacGregor, and she of course makes no complaint as to the effect of her own deed. While Mrs. MacGregor's separate deed may well be said adversely to have affected her then-husband's interest, it seems clear that his subsequent, but identical, deed amounted to his "assent" to that conveyance.
We think that this result is supported by the Supreme Court's decision in Rader v. First National Bank in Palm Beach, Fla. 1949, 42 So.2d 1. In that case, which dealt with personal property, the court specifically recognized the efficacy of separate acts of each spouse to alienate entireties property. At 42 So.2d 1, 2, the Court held:
"Bessie M. Rader was appellant's wife. They maintained a joint account in the bank and a safe deposit box to which both had access. On a certain day during World War II each of them, by separate paper, instructed the bank to purchase $5,000 worth of United States Treasury two and one-half per cent bonds, and the funds in the joint account were used to pay for them ..."
* * * * * *
"In brief, it is appellant's contention that inasmuch as the bonds, though separately ordered were purchased from the common account, the joint interest in that account was translated to the bonds and an estate by the entireties existed in them also. To support his position appellant cites the rule that neither spouse can alien or forfeit his part of any estate by the entireties without the consent of the other; that there can be no severance by the act of one. We do not pause to elaborate on, or take issue in any degree with, the authorities that have recognized this principle. In truth, we are counted among them. We held precisely that in Bailey v. Smith, 89 Fla. 303, 103 So. 833, 834, where we stated: `Neither spouse can alien or forfeit any part of the estate'; then we added `without the assent of the other * * *.'"

*39 "It seems to us that the qualification comes into play here, as it was established by evidence the jury believed that the parties in effect assented to a dissolution of the estate when they ordered the bonds separately. The funds were transferred by both in the same manner for the same purpose on the same day. Thus they can be said to have acted in concert, and we think a just interpretation of these acts is that they intended to sever the estate by each taking five of the bonds." [emphasis supplied]
It seems to us of no moment at all that the separate deeds in this case were not executed on the same day. The pertinent issue is whether the abstractions of the entireties concept are such that separate alienations are irredeemably precluded or whether the intent of the parties is to prevail. The result in Rader, that the former proposition is not true, but that the latter is, directly applies here.
Our result is sustained also by the holding in a case which recites and is often cited for the bare proposition that a husband may not convey his interest in entireties property "without the joinder of his wife in such conveyance... ." Hunt v. Covington, supra, at 200 So. 77. The Hunt case holds that notwithstanding this "rule" the husband, without the joinder of his wife, may deed his interest in entireties property directly to her, since
"the conveyance in this case evidences the intent of the parties to divest the husband of all interest which he had in the property ..." [emphasis supplied]
200 So. at 77-78. The court based this determination, in turn, upon its citation with approval of the reasoning in a New York case, Hardwick v. Salzi, 46 Misc. 1, 93 N.Y.S. 265 (1904), that "by the acceptance of the conveyance the wife manifests her consent to the transfer ..." [emphasis supplied] 200 So. at 77. Clearly the Hunt case stands for the propositions, adopted here, that the properly established consent of one spouse to a separate transfer validates the other's transfer of entireties property. In accord also is First National Bank of Leesburg v. Hector Supply Co., Fla. 1971, 254 So.2d 777, 780-781, which holds that one spouse may validly manifest his or her intent to permit the other spouse individually to dispose of a bank account held by the entireties.
Of course, in a case such as this one, which involves real property  unlike the situations in the Rader and the Hector Supply Co. cases  an effective assent or consent to a separate transfer of entireties property by one spouse may be validly manifested and established only by a properly executed deed, F.S. § 689.01; Parken v. Stafford, 48 Fla. 290, 37 So. 567 (1904); First National Bank of Leesburg v. Hector Supply Co., supra, at 254 So.2d 780. On the other hand, when, as in this case, such a deed is unambiguous and simply tracks the prior conveyance, it is impossible to determine otherwise than that it conclusively demonstrates the intention of the subsequent grantor-spouse, here, Mr. MacGregor, to consent to the earlier transfer by his wife. 10 Fla.Jur., Deeds, §§ 114-115, pp. 159-160. Hence, we must and do conclude that the separate identical deeds from the MacGregors to Mr. Bennett validly effected a transfer of the entireties property to him,[1] excepting only a showing, as alternatively alleged by Mr. MacGregor, that the deeds should properly be *40 regarded as creating no more than a security interest in the property. See F.S., § 697.01. The case is remanded for the sole purpose of determining the validity of this theory of the plaintiff's case and of the defenses raised to it.
Reversed and remanded.
WALDEN, C.J., and OWEN, J., concur.
NOTES
[1] We are aware of the contents of Florida Real Estate Title Standard 6.3, to the contrary of our holding. For the reasons we have stated, we respectfully disagree with the conclusion there expressed.

It might appropriately be pointed out that our decision  which both requires identical deeds by each spouse and gives conclusive effect to such deeds when they exist  does not create any uncertainty at all concerning the result in a particular case. It does, however, change the result as to this set of facts from what it was widely thought, but had never been held, to be.