**In the Matter of Charles Homer DUNCAN and Sharon Marcia Duncan, Debtors.**

**TRANSOUTH FINANCIAL CORP., Plaintiff,**

v.

**Charles Homer DUNCAN and Sharon Marcia Duncan, Defendants.**

Bankruptcy No. 87–4833–8B7.
Adv. No. 87–73.

United States Bankruptcy Court,
M.D. Florida,
Tampa Division.

Dec. 30, 1987.

Catherine Peek McEwen, Tampa, Fla., for plaintiff.

Thomas Joel Chawk, Lakeland, Fla., for defendants.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND MEMORANDUM OPINION

THOMAS E. BAYNES, Jr., Bankruptcy Judge.

THE MATTER under consideration in this Chapter 7 case is a Complaint filed by Plaintiff, Transouth Financial Corporation of Florida (Transouth), against Charles Homer Duncan and Sharon Marcia Duncan (Debtors). The Complaint seeks this Court's determination of the dischargeability vel non of a debt pursuant to 11 U.S.C., Section 523(a)(2)(B). The Court reviewed the pleadings and the record and heard arguments of counsel on November 9, 1987. The undisputed facts, as they appear in the record, are as follows:

On August 20, 1985, Charles Duncan submitted an application to Transouth for an unsecured loan in the amount of $10,-000. Among the assets listed on his application were "2 sets of duplexes." The application was approved by both the loan manager and the home office on the same day. However, Transouth did require Mr. Duncan to submit a current financial statement.

The next day, on August 21, 1985, Sharon Duncan accompanied her husband to Transouth. Although there is conflicting testimony as to the date of submission of the financial statement, the Debtors did submit a financial statement dated March 14, 1985 which also listed the two duplexes as assets of the Debtors. During this visit to Transouth, the Debtors received a check of $10,000 as loan proceeds.

It appears prior to applying for a loan with Transouth, the Debtors conveyed the

duplex property by quit claim deed to a third party, one Mr. Williams. Mr. Duncan maintains, despite this transfer, he was still the owner of the property on August 20, 1985, the date of the loan application. Since he could not meet his first mortgage obligations, Williams agreed to make those payments, and if the property could be sold, both would share somehow in the profits. Mr. Williams also felt there was some continuous ownership in the Duncans which was somehow abrogated by Williams continual payments of the first mortgage. Williams later paid off the mortgage in full and filed the quit claim deed and refinanced the property.

The quit claim deed was not recorded until December 20, 1985. Thus, the deed was not of record at the time the loan application was filed. If Transouth sought to verify title, it never would have observed the transfer from the Debtors to Mr. Williams. No mention of the transfer of the property was made to Transouth at the time of the filing of the application.

Transouth maintains the debt is nondischargeable under Section 523(a)(2)(B) because the Debtors did not own the duplexes listed as assets on the financial statement and application submitted to Transouth. Transouth contends it reasonably relied on Debtors' representations. Further, the Debtors intentionally misrepresented the ownership of the real property to make Transouth believe the Duncans owned it.

In opposition, the Debtors maintain they did not submit a false written financial statement to Transouth with the intent to induce Transouth to lend the Debtors $10,-000. The Debtors believed at the time the financial statement was signed by the Debtors, the Debtors were the record title owners. Further, Transouth did not reasonably rely on the financial statement when approving the Debtors unsecured loan.

It is axiomatic the exceptions to dischargeability are going to be strictly construed in favor of the Debtor. This places a heavy burden upon the creditors to the extent the creditor must show by clear and convincing evidence all the elements associated with Section 523(a)(2)(B).

Section 523(a)(2)(B) provides:

A discharge under ... this title does not discharge an individual debtor from any debt ... for money ... to the extent obtained by ... use of a statement in writing—(i) that is materially false; (ii) respecting the debtors ... financial condition; (iii) on which the creditor to whom the debtor is liable for such money ... reasonably relied; and (iv) that the debtor caused to be made or published with intent to deceive;

The creditor has the burden of establishing the debtors' intent to make false representations. *Macy's v. Pittman (In re Pittman)*, 41 B.R. 382, 11 C.B.C.2d 232 (Bankr. W.D.Mo.1984).

Initially, this Court finds the criteria regarding a written statement which is materially false respecting the Debtors' financial condition has been met. It is without dispute that on August 20, 1985, the Debtors did not own the property listed on the application and financial statement. The execution and delivery of a quit claim deed by a grantor conveys to the grantee such title as the grantor held. *June Sand Co. v. Devon Corp.*, 156 Fla. 519, 23 So.2d 621 (1945). Since the Debtors properly executed and delivered to Mr. Williams the quit claim deed dated May 1, 1985, the Debtors conveyed all their interest in the real property. The fact the deed was not recorded until December 20, 1985 has no bearing on the ownership interests between the Debtors and Mr. Williams.

It appears the Debtors and Mr. Williams may have believed the quit claim deed was some form of a security device. Both parties believed the Debtor retained some sort of ownership interest in the real property. Mr. Williams managed the property and retained collected rents as payment on his loan to the Debtors. If the property sold, the parties intended the Debtors share in the profits. Under Florida law, the quit claim deed could be construed as a mortgage substitute at the time of the executions of the Transouth application and the financial statement. *Williams v. Round-*

*tree,* 478 So.2d 1171 (Fla. 1st DCA 1985); See also, *Blackwelder v. D'Ercole Enterprises, Inc.,* 148 So.2d 721 (Fla. 3rd DCA 1963); *Barr v. Schlarb,* 314 So.2d 609 (Fla. 1st DCA 1975); *MacGregor v. MacGregor,* 323 So.2d 35 (Fla. 4th DCA 1975); *Walker v. City of Jacksonville,* 360 So.2d 52 (Fla. 1st DCA 1978); see also, *Clark v. Howard,* 192 So.2d 302 (Fla. 3rd DCA 1966); Cf. *Holland v. State,* 388 So.2d 1080 (Fla. 1st DCA 1980). As a mortgage substitute, the deed may not have transferred equitable title or Duncan may hold only a lien. However, the Debtors still made a false written statement in violation of Section 523(a)(2). The Debtors were well aware of the encumbrance created by the deed, notwithstanding its legal effect, but omitted it from the financial statement and application.

There are two remaining issues. First, whether or not the Debtor intended to deceive Transouth into making the loan. Second, whether or not the Plaintiff reasonably relied on the application and financial statement of the Debtors.

■ Demonstrating the Debtors submitted the application and financial statement to Transouth with the intent to deceive does not require a showing of actual knowledge of the falsity of the two documents. *Household Finance Corp. v. Howard (In re Howard),* 73 B.R. 694, 703 (Bankr.N.D.Ind.1987).

> A creditor can establish intent to deceive by proving reckless indifference to, or reckless disregard of the accuracy of the information in the financial statement of the debtor.

*Id.* at 703 (citing *Coughlin v. First National Bank of Boston (In re Coughlin),* 27 B.R. 632 (Bankr. 1st Cir.1983)). While it is apparent the Debtors and Mr. Williams believed the Debtors retained some sort of ownership interest in the real property, it is just as apparent the Debtors recklessly disregarded the fact some interest may have been conveyed to Mr. Williams by the quit claim deed. The Debtors knew that by failing to mention the transfer by quit claim deed, the financial statement and application were inaccurate. Thus, this element of Section 523(a)(2)(B) is met by clear

and convincing evidence. In passing, the Court would note there is sufficient evidence to establish this burden on the "Half Truth" doctrine. *European American Bank v. Gitelman (In re Gitelman),* 74 B.R. 492 (Bankr.S.D.Fla.1987).

■ The remaining issue is whether or not Transouth reasonably relied on the application and financial statement in lending the Debtors the $10,000. This Court finds Transouth did not reasonably rely on the listing of the duplexes as assets on the application. Transouth contends if it were known the Debtors did not own the property, Transouth would not have granted the loan. However, no verification was made concerning the ownership of the Debtors, the value of the property, the mortgages on the property, who was in possession of the property, or whether the mortgages were in default. Among other things, a financial statement dated March 14, 1985 was submitted to Transouth on Aug. 20, 1985, possibly after the loan was approved. Therefore, this Court finds Transouth did not reasonably rely on the financial statement in making the loan. The loan application itself suggests the reliance of Transouth was not solely based on the duplex property. The application states:

> This loan was made or an adverse action was taken for the following reason(s):
> Good Credit—Job & res
> [reasonable] stab[ility]
> Good income—ability to pay.

Based on the application and the testimony at the final evidentiary hearing, this Court is satisfied Transouth has not met its burden of proving reasonable reliance by clear and convincing evidence. *Howard* at 700.

This Court finds that Transouth has failed to prove the element of reasonable reliance. Accordingly, this Court finds the $10,000 unsecured debt owed by the Debtors to Transouth is a dischargeable debt under Section 523 of the Bankruptcy Code. A separate final judgment will be entered by this Court.