## In re PAUL DELANEY CO., Inc.

District Court, W. D. New York. April 4, 1928.

1. **Bankruptcy ⊛═►339—Trustee had right to attack bankrupt corporation's mortgage for lack of consideration and violation of Stock Corporation Law (Consol. Laws N. Y. c. 59).**

Trustee of bankrupt corporation had right to attack validity of corporation's mortgage on ground of lack of consideration and violation of New York Stock Corporation Law (Consol. Laws, c. 59), in proceedings for allowance of claim, where no adverse claim was asserted.

2. **Corporations ⊛═►478—Mortgage describing plant and real property of grape juice manufacturing corporation, with provision including "all fixed assets," covered farm used for raising grapes.**

Mortgage describing plant and real property of corporation engaged in business of raising grapes and manufacturing grape juice, and containing in general terms provision including all of corporation's property and fixed assets, real and personal, *held* to include 280-acre farm, owned by corporation and used for purpose of raising grapes, though farm was not specifically described by metes and bounds.

3. **Mortgages ⊛═►126—Intent of general descriptive clauses of mortgage is considered favorable to mortgagee.**

Intent of general clauses of mortgage must be considered as favorable to mortgagee, where sufficiently comprehensive to include property in dispute.

4. **Corporations ⊛═►480—Subsequent mortgagee, participating as officer in execution of corporation's prior recorded mortgage, and assignee taking assignment of second mortgage pending foreclosure of first mortgage, were chargeable with notice of its provisions.**

Subsequent mortgagee of corporation, who participated as an officer of the corporation in the execution and delivery of a prior trust mortgage, and person to whom assignment of second mortgage was made after corporation's bankruptcy and during pendency of action to foreclose the first mortgage, were chargeable with notice of the prior recorded trust mortgage and its general provisions, which included corporation's real estate, though not specifically described.

5. **Bankruptcy ⊛═►188(9)—Alleged insolvent corporation's mortgage, given officer in good faith pursuant to agreement of officer to assume corporation's liability on indorsement, held valid as to corporation's trustee in bankruptcy, consideration being sufficient (Stock Corporation Law N. Y. §§ 15, 69).**

Mortgage given in good faith by corporation to officer to secure officer's assumption of certain liability of corporation as indorser on another corporation's note *held* not invalid for lack of consideration, or for violation of Stock Corporation Law N. Y. (Consol. Laws, c. 59) §§ 15, 69, as to trustee in bankruptcy of corporation, though security was delivered several months after the agreement was entered into and corporation was alleged to have been insolvent, assumption of liability and subsequent payment of the indebtedness of the mortgagor being equivalent to payment in cash to the corporation.

6. **Mortgages ⊛═►25(3)—Mortgage given several months after mortgagee's assumption of mortgagor's indebtedness, where given pursuant to original transaction, was not without consideration.**

Fact that security was not delivered until several months had elapsed after agreement of mortgagee for assumption of mortgagor's indebtedness did not make mortgage payment for an antecedent debt, and therefore invalid for want of consideration, where giving of mortgage was contemplated.

7. **Corporations ⊛═►545(2)—Whether alleged insolvent corporation's mortgage to officer is void depends on good faith of parties (Stock Corporation Law N. Y. § 15).**

Whether mortgage given to officer by corporation during alleged insolvency is in violation of Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 15, and may be set aside by trustee in bankruptcy of corporation, depends on intent of parties and their good faith.

8. **Corporations ⊛═►477(6)—Failure of stockholders to file written assent to corporation's mortgage to officer held not fatal, where prospective stockholder consented, and stockholders assented by subsequent resolution (Stock Corporation Law N. Y. § 17).**

Failure of stockholders to file written consent to corporation's mortgage to officer *held* not to render mortgage void as to trustee in bankruptcy of corporation, under Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 17,

where consent was signed by another corporation as prospective stockholder, and resolution of stockholders of the mortgagor corporation disclosed the interest of the assenting company in the capital stock and the assent of the stockholders to the mortgage.

**9. Corporations ⬦⟾545(6)—Lien of corporation's mortgage to officer was ineffectual as to sum paid by officer prior to agreement for security (Stock Corporation Law N. Y. § 66).**

Where officer of corporation, taking mortgage to secure assumption of corporation's indebtedness as indorser on note, had already paid certain sum thereon before the mortgage was agreed on, lien of mortgage was required to be decreased by the amount of the antecedent payment as to corporation's trustee in bankruptcy, under Stock Corporation Law N. Y. (Consol. Laws, c. 59) § 66, there being no consideration as to such payment.

**10. Bankruptcy ⬦⟾166(3)—Mortgage given officer by corporation on officer's assumption of corporation's indebtedness, though officer was also indorser, held not preference, where corporation's insolvency was not known (Bankr. Act, §§ 60a, 60b; 11 USCA § 96 (a); (b).**

Mortgage given by corporation to officer in return for officer's assumption of indebtedness of corporation as indorser on paper given in connection with organization of new company, which had been abandoned, *held* not void as to trustee in bankruptcy of corporation as preferential transfer, under Bankruptcy Act, §§ 60a, 60b (11 USCA § 96 (a), (b), though recorded within four months period, and though officer was secondarily liable as indorser on the note, and was therefore claimed to be creditor of the bankrupt, where insolvency was not known to officer and preference was not intended.

**11. Bankruptcy ⬦⟾159—Preference involves transfer by debtor while insolvent, which operates to give one creditor advantage over another (Bankr. Act, §§ 60a, 60b; 11 USCA § 96 (a), (b).**

In order to recover property transferred or mortgaged by bankrupt as preference, under Bankruptcy Act, §§ 60a and 60b, 11 USCA § 96 (a), (b), trustee must show that debtor was insolvent, and that the transfer operated to give one creditor an advantage over another.

In Bankruptcy. In the matter of the Paul Delaney Company, Inc., bankrupt. Petition by George G. Renneker and another for revision of the decision of the referee, disallowing their claims as holders of a bond and mortgage. On trustee's motion for dismissal of the petition. Report of referee modified.

See, also, 23 F.(2d) 737.

Wilcox & Van Allen, of Buffalo, N. Y., for petitioners.

Charles F. Blair, of Buffalo, N. Y., for trustee.

HAZEL, District Judge. This is a motion for dismissal of the petition of George G. Renneker and Timothy I. Bourke for revision of the decision of the referee in bankruptcy, wherein their claim as holders of a bond and mortgage for $35,000 made by the bankrupt was disallowed on account of invalidity.[1] The Paul Delaney Company was adjudicated bankrupt on December 14, 1924. This proceeding was instituted before the referee by the trustee, following his appointment, for leave to sell, free and clear of liens, a 200-acre farm owned by the bankrupt company, the valid liens, if any, to attach to the proceeds of sale, and also to cancel the so-called Renneker mortgage, dated in October, 1923, which was assigned to one Bourke. Issue was joined on notice to claimants, who, by their answers, submitted their rights under the mortgages to the jurisdiction of the bankruptcy court.

[1] The trustee had the right to attack the validity of the mortgage for lack of consideration and violation of the Stock Corporation Law (Consol. Laws, c. 59). Karasik v. People's Trust Co. (D. C.) 252 F. 324, affirmed (C. C. A.) 252 F. 337. No adverse claim was asserted. In re Bacon (C. C. A.) 210 F. 134, 135. Evidence was adduced before the referee relating to the status of the asserted liens. The validity of the mortgage to Renneker and the bona fides of the assignment to Bourke were challenged, while, on the other hand, Renneker and Bourke jointly disputed the validity of the prior trust mortgage, amounting to $750,000, executed on September 1, 1921, by the Delaney Company to the Marine Trust Company of Buffalo, and assert that the $35,000 mortgage is a valid lien upon the farm. Two mortgages, aggregating $7,041.71, with interest, upon which a judgment of foreclosure had been entered, but no sale had thereon, were concededly valid and subsisting first liens upon the farm in question, and the referee decided that the trust mortgage covering specifically the real and personal property of the bankrupt company, including, in general terms, the 200-acre farm known as the "American-Maid farm," was also a valid and subsisting lien for the amount secured to the bondholders and interest thereon; but that the Renneker mortgage, in view of the evidence, was void, in that its execution and delivery were not authorized by the stockholders of the corporation; that it was made to Renneker, a director and vice president of the bankrupt, for an insufficient consideration, in violation of section 15 of the Stock Corporation Law of this state, and in fact was without consideration under section 69; and finally, assum-

---

[1] On the return day a hearing was had on the exception to the report.

ing said mortgage to be a valid lien, that it operated as a preferential transfer to a creditor of the bankrupt within four months prior to filing the petition in bankruptcy.

[2] In considering the various grounds of objection to the validity of the Renneker mortgage, it is necessary to briefly narrate the material facts in relation thereto, and also in relation to the execution and delivery of the trust mortgage. As to the latter, it appears that the entire farm, claimed to have been included in the mortgage, is located in Portland, N. Y. All the premises mortgaged were owned by the bankrupt and were used in its business of raising grapes and using their juice in the manufacture of grape juice. The trust mortgage is dated September 1, 1921, and was duly and properly recorded. It particularly described the plant and real property of the bankrupt at Brocton and Saratoga, Ind., and in general terms contained a provision including all the property and fixed assets of every kind or description of the mortgagor, both real and personal, excepting only from the lien the quick assets. It did not specifically describe the 200-acre farm, but it contained a provision indicating the intention of the parties to include any and all property, real and personal, owned and possessed by the mortgagor.

[3] It is clear, upon reading the specific general provision, together with the resolution of the stockholders of the corporation authorizing its officers to execute the trust mortgage, and the subsequent ratification of their action, that not only the equipment and machinery and real estate of the bankrupt, but also the farm in controversy, were intended to be included in the mortgage lien. The evidence shows that the farm, located not far from Brocton, where the bankrupt conducted its business, was used as an adjunct to its plant, and insufficient reason has been advanced for excluding it from the lien of the trust mortgage. Failure to include a specific description by metes and bounds does not negative the intendment of the parties, for the general clauses contained in the document are sufficiently comprehensive to include the farm, and such intent must be considered as favorable to the mortgagee. Beattie v. Garrison, 204 App. Div. 335, 198 N. Y. S. 71; Cincinnati Gas & Elec. Co. v. New York Trust Co., 215 App. Div. 122, 213 N. Y. S. 314; Clifton Heights Land Co. v. Randell, 82 Iowa, 89, 47 N. E. 905; American Brake Shoe Co. v. New York Rys. Co. (D. C.) 277 F. 261; Gowdy v. Cordts, 40 Hun (N. Y.) 469. There was no absolute necessity for a more specific description, since, as said, the intention of the parties is definitely apparent. Enlargement on this subject is unnecessary, for numerous authorities, in addition to those cited above, support this view.

[4] It is shown that Renneker, at the time the trust mortgage was made, was manifestly fully informed of its terms, had participated, as an officer of the corporation, in its execution and delivery, and, indeed, was aware that a foreclosure action was started, which fully described the real property mortgaged. His subsequent assignment to Bourke, his son-in-law, dated April, 1925, was made more than a year after the bankruptcy, and while the foreclosure action was pending. Renneker's knowledge was imputable to his assignee, who must be deemed to have had constructive notice of the prior trust mortgage and its provisions, together with its recording. Peninsular Naval Stores v. Tomlinson (D. C.) 244 F. 598. See, also, 41 C. J. 562.

In opposition to this view as to the law, and the fair inferences drawn from the included provisions and from the surrounding facts and circumstances, it is contended by counsel for objecting claimants that Renneker's testimony, wherein he swore that at the time the trust mortgage was made it was not intended to include the farm, should be given controlling weight. But I am unable to adopt this view, for I am convinced that the clauses in the trust mortgage, to which reference has been made, were broad enough to justify the holding that it was the intention of the parties to include the farm within its terms, subject only to the prior judgment recovered by Ralph A. Hall.

As to the Renneker mortgage. The date of the Renneker mortgage was August 27, 1923, and it was acknowledged by the president of the Paul Delaney Company on October 2, 1923, while, according to the corporate minutes in evidence, the consent of the stockholders (Paul Delaney, owning 1,335 shares; Renneker, 1,340 shares; proxies to Renneker, 13,840 shares; and McClure, 305 shares) was given on the same day. The consent, filed in Chautauqua county clerk's office, was signed by Delaney Products Corporation, not a stockholder, but which was organized for the purpose of exchanging its capital stock for the capital stock of the Paul Delaney Company. The latter company, however, by its stockholders, ratified and confirmed the transfer.

Counsel for the trustee contends that the transfer of the stock to the Delaney Products Corporation and the subsequent agreement to execute and deliver the Renneker mortgage

was a violation of section 15 of the Stock Corporation Law.[2] The proofs show that the consideration for the mortgage was based upon the assumption by Renneker, in the spring of 1923, of an indebtedness of the Paul Delaney Company arising from its indorsement and the indorsement of Renneker on a promissory note given by the Republic Packing Company. The latter company was organized by the Paul Delaney Company, allied with two other companies, for the purpose of manufacturing and selling cider at Lockport. To equip the plant, the Packing Company borrowed $100,000 on its promissory note, indorsed by the organizers, including Renneker, who was a director of the Paul Delaney Company. Owing, however, to cancellation of numerous orders for cider by customers, the newly organized company was abandoned. Of its indebtedness $15,000 was paid by the Packing Company before abandonment, leaving a balance of $85,000. This amount the three allied companies agreed to pay in equal proportions of $23,666.67; Renneker agreeing to supply the funds to meet the proportionate share of the Paul Delaney Company on condition that it would give him a mortgage, as security, on the American-Maid farm, for the amount assumed by him, including an advance made at such time of $5,000, and the further sum of $5,856.95 owing on an open account. The mortgage was delivered August 27, 1923. Subsequently Renneker assigned the mortgage to one Burgard as collateral to a promissory note payable one year after date. During the year he paid $5,000 in reduction of the note. Burgard later assigned the mortgage to the Marine Trust Company, and at maturity foreclosure was threatened, and then Bourke, at Renneker's request, paid the balance of $18,000 due thereon, Bourke taking the assignment from the Marine Trust Company of said mortgage as security.

[5-7] I do not discover sufficient cause to hold the mortgage invalid for lack of consideration or for violation of acts prohibited by the Stock Corporation Law. It is shown that full value was given by Renneker for the mortgage. Assumption of liability and subsequent payment of the indebtedness of the mortgagor was equivalent to payment in cash to the corporation. That the security was not delivered until several months had elapsed does not constitute the mortgage a payment for an antecedent debt, as the transactions were not separate, but merely a consummation of what had been agreed upon. In re Metropolitan Dairy Co. (C. C. A.) 224 F. 444. Neither insolvency at the time of the execution of the mortgage, assuming the bankrupt to have been insolvent, nor the assumption by a director of the debt arising from the Republic Packing Company transaction, who thereafter assigned the mortgage to Burgard, rendered the transaction invalid under the statute. Duncomb v. N. Y. R. R. Co., 84 N. Y. 190; Turn-Lick Oil Co. v. Marbury, 91 U. S. 587, 23 L. Ed. 328. It depends wholly upon the intention of the parties, and since, in good faith, they aimed to effectuate the previous arrangement, the objection is considered without force. See, also, Paulding v. Chrome Steel Co., 94 N. Y. 341, and In re Metropolitan Dairy Co., supra.

[8] Nor do I find the alleged inconsistency in the consent to the execution of the mortgage by the stockholders or consent of the Delaney Products Corporation sufficient reason for holding the mortgage invalid. It was intended that the Delaney Products Corporation should exchange its stock for that of the Paul Delaney Company, and, in pursuance thereof, the consent to mortgage was signed by Delaney Products Corporation, as holder of 16,830 shares of stock in the Paul Delaney Company. Even though the stock book of the latter company fails to show the Delaney Products Corporation to be a stockholder when the consent to execute the mortgage was filed, the resolution of the stockholders disclosed its interest in the capital stock and their assent to the mortgage. On this point see Karasik v. People's Trust Co. (D. C.) 252 F. 324, affirmed (C. C. A.) 252 F. 337.

In view thereof, failure to file written consent was not, I think, an indispensable requirement, except as to accrued intervening rights (Rochester Sav. Bank v. Averell, 96 N. Y. 467); and the record, it seems to me, shows a ratification by the stockholders, not-

---

[2] "No corporation which shall have refused to pay any of its notes or other obligations, when due, in lawful money of the United States, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. * * * Every person receiving by means of any such prohibited act or deed any property of a corporation shall be bound to account therefor to its creditors or stockholders or other trustees. * * * Every transfer or assignment or other act done in violation of the foregoing provisions of this section shall be void."

Section 17 provides that, when a corporation mortgage is "executed by authority of the board of directors in behalf of the corporation," and "recites or represents that the execution of such mortgage shall be duly consented to or authorized by stockholders," this shall be "presumptive evidence" of such consent, etc.

withstanding the somewhat irregular way in which it was done. The case of In re Post & Davis Co. (C. C. A.) 219 F. 171, upon which counsel for the trustee relies, is distinguishable, for there no attempt was made to ratify the making of the chattel mortgage or give assent thereto.

[9] It is next urged that full value was not paid in cash in consideration of the security, and as required by section 66 of the Stock Corporation Law. There was evidence that $5,000 was paid by Renneker in April, 1923, when it was arranged to give the mortgage to secure him on the Republic Packing Company indebtedness. The $5,856.95 on open account in his favor was concededly an antecedent debt. It was practically unconnected with the mortgage transaction, and, as counsel for Renneker admitted, the consideration for the mortgage perhaps was not sufficient "to carry with it security for that item." As to this amount, I think the lien of the mortgage should be decreased, without, however, affecting its alleged validity as to the balance unpaid.

[10, 11] It is also contended by the trustee that the mortgage is void under sections 60a and 60b of the Bankruptcy Act (11 USCA § 96 [a], [b]). I do not think that it may be considered as a preferential transfer, even though the mortgage was recorded a few days less than the four months period before the petition in bankruptcy was filed. By the evidence of the auditors of the bankrupt's books, it appears that the bankrupt was hopelessly insolvent as of March 14, 1924, and while it may be regarded as a failing debtor at a somewhat earlier period, its condition was not known to Renneker, notwithstanding its failure to pay interest for six months on the trust mortgage and the pledging of certain of its bonds as collateral security.

As said in a recently decided case (In re International Woodenware Co. [D. C.] 23 F.[2d] 867): "The line between solvency and insolvency is not, however, a sharply defined one. Between the territory of the one and the other there is an overlapping zone of financial strain and stress which may become either."

It must therefore be shown by the trustee, to recover property transferred or mortgaged, that the debtor was insolvent within the meaning of the Bankruptcy Act (11 USCA), and that the transfer operated to give one creditor an advantage over another. Such, I conceive, was not the instant case. As I interpret the evidence, the mortgage was made for a then present consideration, except as to the amount already mentioned, at a time when Renneker believed that the financial condition of the corporation was good. It is not shown that he had knowledge of the insolvency at the time the agreement to mortgage was made, or when the mortgage was recorded. Although he was an officer of the company, the business was in fact conducted by Delaney, its president. Nor had he, or Bourke, reasonable cause to believe that a preference was intended. In the case of Grandison v. National Bank of Commerce (D. C.) 220 F. 981, affirmed (C. C. A.) 231 F. 800, the facts were essentially different. There the president of the bank which had received the preference was found wholly familiar with the insolvent condition of the bankrupt at the time of receiving the preference within the statutory period, while here the proofs are insufficient to establish knowledge, prior to the report of the auditors who examined the books, that the corporation was insolvent.

The point is made that Renneker was secondarily liable as indorser on the Republic Packing Company note, and was therefore a creditor of the bankrupt. But, since the mortgage was given to secure him by arrangement, this point must fail, because at such time it was not shown that the bankrupt was insolvent.

The report of the referee is modified, and the Renneker mortgage held a valid lien—a third lien—on the premises with which we are herein concerned.

So ordered.