148 So.2d 721 (1963)
Mary Louise BLACKWELDER, Appellant,
v.
D'ERCOLE ENTERPRISES, INC., a Florida corporation, United States of America, Florida Industrial Commission, Charles J. Bodner, Lueben K. Greenwood and Frances Greenwood, his wife, and Samuel L. Mensh, Appellees.
No. 62-78.
District Court of Appeal of Florida. Third District.
January 22, 1963.
Rehearing Denied February 8, 1963.
*722 Anderson & Nadeau, Miami, for appellant.
Charles J. Bodner and Charles E. Buker, Jr., Miami, for appellees.
Before PEARSON, TILLMAN, C.J., and CARROLL and BARKDULL, JJ.
CARROLL, Judge.
This is the second appeal in this cause. The main facts were set out in the opinion *723 on the first appeal.[1] The present appeal was taken by the plaintiff, Mary Louise Blackwelder, after her husband the plaintiff Leroy J. Blackwelder was dismissed.[2]
In proceedings in the circuit court after remand following the first appeal, a final decree was entered holding that a blanket mortgage from D'Ercole Enterprises, Inc. to Blackwelder, dated November 28, 1956, for $50,000, merged into the deed to three lots which he received on December 20, 1956; that the deed was void because it was without consideration; and confirming title to the three lots in the appellee Bodner.
During October and November of 1956, Blackwelder made a number of advances to D'Ercole Enterprises, Inc. which aggregated $41,500. He also caused the corporation to repay him certain amounts during that time, with the result that the balance due Blackwelder on November 28, 1956, was $25,000. On that date he received from the corporation the blanket mortgage and a note for $50,000 payable on demand and without interest. Later, on December 20, 1956, Blackwelder received the deed to the three lots involved in this suit. In the complaint, the Blackwelders did not seek to enforce the mortgage of November 28, 1956, but sought a declaration that the deed of December 20, 1956, was a valid conveyance, or its foreclosure if found to have been given for security.
Appellee Bodner argued that the subsequent deed as well as the mortgage was invalid under § 608.55, Fla. Stat., F.S.A. That section provides in pertinent part as follows:
"No corporation which shall have refused to pay any of its notes or other obligations when due, nor any of its officers or directors, shall transfer any of its property to any of its officers, directors or stockholders, directly or indirectly, for the payment of any debt, or upon any other consideration than the full value of the property paid in cash. * * * Every transfer or assignment or other act done in violation of the foregoing provision of this section shall be void except in the hands of a purchaser for a valuable consideration without notice. * * *"
The financial condition of the corporation was shown to be such that the statute prohibited a transfer to an officer[3] for an antecedent debt. Milbank v. Welch, 74 Hun. 497, 26 N.Y.S. 705 (Sup.Ct. 1893); Tierney v. J.C. Dowd & Co., Inc., Sup.Ct. 1922, 197 N.Y.S. 155, rev'd on other grounds 238 N.Y. 282, 144 N.E. 583.[4] A mortgage *724 is considered as a transfer of property within the meaning of a statute such as § 608.55, Fla. Stat., F.S.A. See Karasik v. People's Trust Co., E.D.N.Y. 1917, 252 F. 324, 334; Munson v. Genesee Iron & Brass Works, 37 App.Div. 203, 56 N.Y.S. 139 (App.Div. 1899).
In holding that the blanket mortgage for $50,000 made by the corporation to Blackwelder on November 28, 1956, was invalid and unenforceable, the chancellor was correct, but not on the merger ground which he assigned. The mortgage was invalid for failure to meet the requirements of the statute (§ 608.55) as to consideration for a transfer to an officer by a corporation which is in the financial condition referred to in the statute. The mortgage was given to secure an antecedent debt owed by the corporation to its officer. Blackwelder testified that during the course of the series of advances which he made to the corporation it was agreed that he was to receive security. However, it was not established that there was an agreement at the outset for security for the series of advances, assuming but not deciding that such an agreement had it been made would have satisfied the requirements of the statute. On the other hand the evidence shows that at the time Blackwelder made a particular advance of $20,000 on November 13, 1956, there was an agreement for the deed to be given as security therefor, and that later the deed was given for that purpose.[5]
*725 Where there is an agreement at the time of the creation of an obligation that it will be secured by a mortgage or security deed, the fact that the mortgage or security deed may be executed and delivered some time after the creation of the obligation will not place that obligation in the category of an antecedent debt so as to invalidate the security under such a statute as § 608.55, Fla. Stat., F.S.A. In re Metropolitan Dairy Co., 2 Cir.1915, 224 F. 444; In re Paul Delaney Co., W.D.N.Y. 1928, 26 F.2d 937, aff'd mem., 2 Cir.1929, 30 F.2d 1018; Profaci v. Mamiapro Realty Corp., 130 N.Y.S.2d 851, 855 (Sup.Ct. 1954). In the Delaney case, a director of a corporation, on condition that the corporation would furnish him mortgage security, assumed its debt for $23,666.67, and at the same time advanced it $5,000 in cash. About four months later the corporation executed a mortgage to the director in the amount of $35,000 to secure the sum assumed by him and the $5,000 advance; and to secure an open account indebtedness of $5856.95 previously owed to the director by the corporation. The trustee in bankruptcy sought to set aside the mortgage as executed in violation of the New York statute from which § 608.55, Fla. Stat., F.S.A., was adopted.[6] The court held the mortgage valid as security for the amounts assumed and advanced at the time of the agreement, but not as to the open account indebtedness. In so holding, the court said, 26 F.2d at 940:
"I do not discover sufficient cause to hold the mortgage invalid for lack of consideration or for violation of acts prohibited by the Stock Corporation Law. It is shown that full value was given by Renneker for the mortgage. Assumption of liability and subsequent payment of the indebtedness of the mortgagor was equivalent to payment in cash to the corporation. That the security was not delivered until several months had elapsed does not constitute the mortgage a payment for an antecedent debt, as the transactions were not separate, but merely a consummation of what had been agreed upon. In re Metropolitan Dairy Co. (C.C.A.) [2 Cir.,] 224 F. 444. * * *
* * * * * *
"* * * The $5,856.95 on open account in his favor was concededly an antecedent debt. It was practically unconnected with the mortgage transaction, and, as counsel for Renneker admitted, the consideration for the mortgage perhaps was not sufficient `to carry with it security for that item.' As to this amount, I think the lien of the mortgage should be decreased, without, however, affecting its alleged validity as to the balance unpaid."
We conclude the chancellor was in error in holding, in the instant case, that the deed was without consideration. Also we reject the holding of the chancellor that the plaintiffs' suit was barred by laches. There were no allegations or proof of facts sufficient to sustain a contention of laches. Although there was a period of delay, the appellee, Bodner, made no showing that the delay was unreasonable and operated to his disadvantage. See Dacus v. Blackwell, Fla. 1956, 90 So.2d 324; Van Meter v. Kelsey, Fla. 1956, 91 So.2d 327. The points made on the cross assignment have been considered and held to be without merit.
A deed given for the purpose of securing repayment of an obligation is deemed a mortgage foreclosable in equity and constitutes a lien to the extent of the indebtedness secured thereby. Section 697.01, Fla. Stat., F.S.A. Equitable Building & Loan Association v. King, 48 Fla. 252, 37 So. 181; Holmberg v. Hardee, 90 Fla. 787, 108 So. 211; Stovall v. Stokes, 94 Fla. 717, 115 So. 828; McKinney v. Gainey, 96 Fla. 547, 118 So. 917; Brooks v. Federal Land Bank of Columbia, 106 Fla. 412, 143 So. *726 749; Torreyson v. Dutton, 145 Fla. 169, 198 So. 796. Its nature as a security interest may be established by parol evidence. Stovall v. Stokes, supra; Markell v. Hilpert, 140 Fla. 842, 192 So. 392; Torreyson v. Dutton, supra.
For the reasons stated the decree appealed from is reversed and the cause remanded for further proceedings to foreclose the security deed as a mortgage for such sum, without interest, as the chancellor may find remains outstanding and unpaid of the $20,000 which was advanced on November 13, 1956, for repayment of which the deed of December 20, 1956, was given as security, less any sums that the appellee, Bodner, may have expended for taxes and assessments on the property involved during the period between March 12, 1958, the date of the dismissal of the appeal from the order of sale of the civil court of record, and June 2, 1959, the date of filing the instant suit.
Reversed and remanded.
PEARSON, TILLMAN, Chief Judge (dissenting).
I must dissent from the conclusion reached by the majority on this appeal because I would hold that there is sufficient evidence to support the findings of the chancellor. They were as follows:
"1. That the subject matter of this suit is the interest of the parties in and to the following described property, to-wit:
"Lots 13, 14, and 15, Block 78 of SEVENTH ADDITION TO HIALEAH, according to the Plat thereof, recorded in Plat Book 9, at Page 6, of the Public Records of Dade County, Florida
"2. The mortgage dated the 28th day of November, 1956, in the sum of $50,000.00, from D'Ercole Enterprises, Inc., a Florida corporation, and Renato D'Ercole and Betty D'Ercole, his wife, to Leroy J. Blackwelder, recorded on the 22nd day of March 1957, in Official Records Book 145, Page 124, Public Records of Dade County, Florida, encumbering, among other lots, the above described property, set forth in paragraph numbered 1 above, is void and of no force and effect as against Steelco of Miami, Inc., Defendant Bodner, and the creditors of D'Ercole Enterprises, Inc.
"3. Said mortgage, insofar as it affects the above described lots, merged into the deed from D'Ercole Enterprises, Inc. to Leroy J. Blackwelder, dated December 20, 1956, filed December 21, 1956, in Deed Book 4380, Page 450, Public Records of Dade County, Florida.
"4. Said deed from D'Ercole Enterprises, Inc. to Leroy J. Blackwelder, filed December 21, 1956, in Deed Book 4380, Page 450, aforesaid, is without consideration and void as to Steelco of Miami, Inc., Defendant Bodner and creditors of D'Ercole Enterprises, Inc.
"5. The deed dated June 12, 1957, filed on June 13, 1957, in Official Records Book 287, Page 434, from Leroy J. Blackwelder and Mary Louise Blackwelder, his wife, to Mary Louise Blackwelder, conveying lots 13, 14 and 15, of Block 78, above described, is without consideration and void as to Steelco of Miami, Inc., Defendant Bodner and creditors of D'Ercole Enterprises, Inc.
"6. Leroy J. Blackwelder and Mary Louise Blackwelder have no legal or equitable interest in the property in question.
"7. Plaintiff Mary Louise Blackwelder is guilty of laches.
"8. That the equities of the cause are with the Defendant Bodner."
The ground assigned by the chancellor for his finding the deed from the corporation to Leroy J. Blackwelder (conveying the same lots included under the mortgage) void, was a lack of consideration. It is this finding which is reversed.
*727 It is true that the testimony of Leroy J. Blackwelder could have formed a basis for a finding by the chancellor that $20,000.00 in cash was withdrawn from a safety deposit box and deposited to the credit of the corporation and that the advance was consideration for the deed to the three lots. But the chancellor did not so find, and on appeal it is the duty of the appellate tribunal to determine whether there is evidence in the record to support the finding that the chancellor did make. His finding that the deed was without consideration is supported by Blackwelder's own testimony that the $20,000.00 claimed as consideration for the deed was included in and secured by the void mortgage[1] and not under a separate agreement for security by deed. This advance was made on November 13, 1956; the mortgage was given November 28, 1956, and the deed was given December 20, 1956.
The finding of the chancellor that all of the advances were to be secured by the mortgage is substantiated by the subsequent actions of Blackwelder in that the record shows he reduced all such advances to judgment and this judgment was in the amount of $15,694.52  the sum of all outstanding advances made to the corporation.[2] For these reasons, I would hold, as did the chancellor, that these advances were part and parcel of a continuing transaction.
I believe that there is also support in the record for the finding that plaintiff, Mary Louise Blackwelder, was guilty of laches. Mr. Blackwelder received the deed that he now claims as security for advances to the corporation on December 30, 1956. He deeded the property to his wife on June 12, 1957. This suit was instituted on June 2, 1959, by Leroy J. Blackwelder and Mary Louise Blackwelder. In the interval between December 20, 1956, when the deed was taken by Leroy J. Blackwelder, and June 2, 1959, when this suit to quiet title was instituted, the property involved was sold at execution sale as the property of the corporation. The date of the sale was December 7, 1957. The present title holder, Bodner, immediately thereafter acquired title from the purchaser at the execution sale.
I would affirm the decree first on the finding of the chancellor as to the invalidity of the deed to Leroy J. Blackwelder, and second, upon the finding as to laches.
NOTES
[1] See Blackwelder v. D'Ercole Enterprises, Inc., Fla.App. 1961, 126 So.2d 598, where we reversed the circuit court's summary decree for defendants because it was based on a holding of the civil court of record (in proceedings supplementary to a judgment against the corporation) that the deed relied upon by Blackwelder as a mortgage was invalid; a holding that was outside the jurisdiction of the civil court of record. We remanded the cause to the circuit court for further proceedings.
[2] Blackwelder was dimissed by the chancellor because, prior to the execution sale under which the appellee Bodner claims title to the three lots involved in the instant case, he transferred to his wife the security interest he held under the deed of December 20, 1956.
[3] Although Blackwelder was not a duly appointed or elected officer when the mortgage was given, the record shows facts from which it could be found that he was de facto officer at that time. See Augusta T. & G.R. Co. v. Kittel, 5 Cir.1892, 52 F. 63, 71; 2 Fletcher, Private Corporations §§ 373, 374 (rev. ed. 1954). A de facto officer may not set up his lack of de jure status to avoid an officer's liability under the statute. See 2 Fletcher, Private Corporations § 390 (rev. ed. 1954). The deed was attested by Blackwelder as secretary of the corporation.
[4] The state and federal courts in New York have had much experience with a similar statute, Stock Corporation Law, McKinney's Consol.Laws, c. 59, § 15, and the Florida statute was adopted from New York. See Denmark v. Ridgell Furniture Co., 117 Fla. 244, 157 So. 489.
[5] Blackwelder's testimony as it related to the deed included the following:

"Q (By Mr. Bodner) What was the consideration for the deed on December 20, 1956?
"A The consideration: The deed to the three commercial lots, 13, 14, 15, which is the dispute in this case, was that on November 12th, the day before, Mr. D'Ercole and Mr. Barudy contacted me about what they were going to do about the three lots. They said that the company did not have the money to buy and make the closing on the third lot, which was Lot 13, and the closing was coming up on November 13th. They had already purchased Lot 14 and Lot 15, and they purchased that with money that was drawn from the Federal Building & Loan Association, Flagler Federal and Washington Federal. They used that money instead of paying the creditors, which were the subcontractors who were working on the construction of the houses that they had under construction at that time. Instead of paying these people, they used the money to buy these lots, 14 and 15. So when Lot 13 came time for the closing, they didn't have the money required to make the closing, and Mr. D'Ercole and Mr. Barudy approached me and said, `What are we going to do if we don't get Lot 13? Then 14 and 15 will be no good for us because we won't have enough frontage on Palm Avenue to build what we proposed to build.'
"So we talked about the thing and they asked me to put up the money, because they would lose Lot 13, therefore, the other ones would be no good. I said, `I will tell you what I will do, I will put $20,000 in the company if you'll agree to deed the lots to me for the $20,000, and when I get my money back out of this company, then you can have your lots back.' And Mr. D'Ercole and Mr. Barudy agreed to that. That was on the morning of November 13, 1956.
* * * * *
"THE WITNESS: It was November 13, 1956, that I went to the safety deposit box in the Central Bank and withdrew out of the safety deposit box $20,000 in one-thousand dollar bills, and I took it to the Hialeah-Miami Springs Bank and O'Ercole went with me and I deposited it in the account.
"I handed the money over to D'Ercole and he shoved it up to the window and he wrote on the ticket in his own handwriting, `From Blackwelder on November 13, 1956, twenty one-thousand dollar bills.' And Mr. D'Ercole, before I did that, agreed to deed these lots to me, and whenever I got my money back, he got the deed back.
"Q (By Mr. Bodner) Let me reframe my question so as to clear it up, Mr. Blackwelder.
"The $20,000 deposit dated November 13, 1956, in your deposit book, that deposit of $20,000 you have asserted is a consideration for the deed of December 20, 1956; is that correct, sir?
"A Well, I just told you. I just told you.
"Q Is that correct, Mr. Blackwelder?
"A I just got through telling you what we did and what we agreed to.
* * * * *
"Q (By Mr. Bodner) So that you made that $20,000 deposit on November 13, 1956, as consideration for this deed of December 20, 1956?
"A That's correct."
[6] See Note 4 supra.
[1] From the Transcript of Testimony:

"Q (By Mr. Bodner) November 13, 1956, you testified that you deposited $20,000 to the account of D'Ercole.
"A It is right here in the deposit book.
"Q And that $20,000 you include in totaling the $40,000 as a basis for this $50,000 mortgage?
"A The $20,000 was part of the $40,000, yes.
* * * * *
"Q But you have already testified, Mr. Blackwelder, that you paid $40,000 for this $50,000 mortgage, and you included the $20,000 as part of the consideration for the mortgage. How do you explain that?
"A All right. I will explain it to you. Mr. D'Ercole and Mr. Barudy and Mr. Roberts, an attorney, were discussing this as to how we were going to handle these matters so that I would be secure in the money I was putting in D'Ercole Enterprises. Mr. Roberts at first suggested a mortgage, and then I thought about the deed, and he says, "We will get both," and D'Ercole says, `I will give you both,' and as a matter of fact, he was going to give me the stock, and they discussed it back and forth so that I could have maximum security."
[2] Plaintiff's Exhibit No. 4 is a Final Decree in Chancery Cause No. 208244-N, D'Ercole Enterprises v. Blackwelder. It contains the following findings:

"1. That at various times Leroy J. Blackwelder loaned and advanced monies to the Corporation.
"2. That on November 28, 1956 the Corporation executed and delivered to Blackwelder its non-interest bearing note in the principal sum of $50,000.00.
"3. That Blackwelder took over and managed the affairs of the Corporation, selling its assets, paying off its creditors as more fully reflected by Defendant's Exhibit F.
"4. That there is a present balance due Blackwelder in the sum of $15,694.52."